UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-26-KSF

EFFIE J. CRESS                                                       PLAINTIFF

vs.                         **OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                     DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's Motion for Summary Judgment to reverse the decision of the Commissioner denying benefits to Plaintiff [DE #8] and Defendant's Motion for Summary Judgment in support of the Commissioner's Decision [DE 9]. Having been fully briefed, these motions are ripe for review.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed an initial application for disability benefits on April 11, 2000, claiming disability since June 5, 1995. This claim was denied initially and upon reconsideration by the agency, then by Administrative Law Judge ("ALJ") Shultz, and then by the Appeals Council. Plaintiff appealed the denial of benefits to the United States District Court. Meanwhile, Plaintiff filed a second application for disability benefits on October 1, 2001, alleging disability beginning August 31, 2001, the date after the decision by ALJ Shultz. At the Commissioner's request, the Court remanded the first case to the Social Security Administration for re-evaluation and consolidation with the subsequent claim. [DE#8-3].

On September 17, 2003, ALJ Shultz conducted a *de novo* hearing to consider Plaintiff's disability from June 15, 1995 to the date of the hearing. On October 22, 2003, ALJ Shultz denied Plaintiff's claim; the Appeals Council affirmed; and an appeal was taken to federal court. On March 25, 2005, United States District Judge Jennifer B. Coffman affirmed ALJ Shultz's decision.

While this federal court appeal was pending, Plaintiff filed a third application for disability benefits on December 11, 2003, alleging disability since October 23, 2003, the day following ALJ Shultz' opinion. Following initial and reconsideration denials, ALJ Roger Reynolds conducted a hearing on January 5, 2005, and denied benefits on April 21, 2005. The Appeals Council denied Plaintiff's request for review. *Id.* The present case is the appeal from those denials.

Plaintiff claims disability due to fibromyalgia, bilateral carpal tunnel syndrome, depression, anxiety, somatoform disorder, osteopenia, irritable bowel syndrome, gastroesophageal reflux disease, migraine headaches, and segmental joint disease of the knees (Tr. 15). ALJ Reynolds found that her impairments were "severe" in combination under the Regulations, "but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *Id.*

At the time of ALJ Reynolds' decision, Plaintiff was fifty years of age and had a GED diploma. Her work history included factory work in various assembly and calibrating jobs and as a part-time tax preparer. Because Plaintiff produced no new evidence to warrant a change in ALJ Shultz's determination of Plaintiff's residual functional capacity (RFC) that she could perform a significant range of light work, ALJ Reynolds adopted that prior determination (Tr. 18, 35).

In this appeal, Plaintiff challenges ALJ Reynolds' decision as failing to accord appropriate weight to the opinion of her primary care provider, Dr. Frank McBrayer [DE #8-3, pp. 10-12]. She further claims that the decision of residual functional capacity of light work is not supported by substantial evidence [*Id.*, pp. 13-15].

## II.   ANALYSIS

### A.   Standard of Review

"Disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Commissioner of Social Security,* \_\_\_ F.3d \_\_\_, 2007 WL 2752888 (6th Cir. Sept. 24,

2

2007); 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant has a compensable disability under the Social Security Act, the Commissioner must follow a five-step "sequential evaluation process." 20 C.F.R. § 404.1520(a)-(e); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). Those five steps were summarized in *Walters* as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

5. Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.* "[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Id.*

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and whether the proper legal standards were followed. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Commissioner of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999). The court must review the record as a whole and take into account

whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

For purposes of review of the Commissioner's decision, the relevant period to be considered is from October 23, 2003, the date the alleged disability began following ALJ Shultz's decision, through the April 21, 2005 decision of ALJ Reynolds. All claims of prior disability have been finally adjudicated and are not subject to further review.

The opinion of a treating physician must be considered together with the other relevant evidence to determine whether the opinions are internally consistent, externally consistent with the record as a whole, and supported by clinical findings. 20 C.F.R. §§ 404.1527(b), (c), (d)(3)-(4). A disability opinion by a treating physician is to be given controlling weight only if it is consistent with other evidence and supported by clinical and laboratory findings. 20 C.F.R. §§ 404.1527(b), (d)(2), (3)-(4); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188.

**B.     Whether the ALJ Failed to Give Appropriate Weight to the Opinions of Plaintiff's Treating Physician**

Plaintiff complains that ALJ Reynolds "ignored" her treating physician's opinion dated November 25, 2003 regarding her Ability To Do Work-Related Activities in which Dr. McBrayer wrote that her (1) maximum ability to lift and carry on an occasional basis was less than 10 pounds; (2) maximum ability to lift and carry on a frequent basis was 0 pounds; (3) maximum ability to stand and walk was less than 2 hours; (4) maximum ability to sit was about 6 hours; (5) length of time to sit before changing positions was 15 minutes; (6) length of time to stand before changing positions was 15 minutes; (7) a need to walk around for 5 minutes every 30 minutes; (8) a need to shift at will from sitting to standing/walking; and (9) a need to lie down at unpredictable intervals 4 times per shift.

Plaintiff further complains that ALJ Reynolds failed to give adequate consideration to Dr. McBrayer's Fibromyalgia Residual Functional Capacity Questionnaire dated the same day in which he diagnosed depression and hyperthyroidism, said she had "multiple muscular tender points," and

4

checked that she had nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent, severe headaches, anxiety, depression, and chronic fatigue syndrome (Tr. 372-73). He checked that she had fairly continuous pain in all bilateral areas, that pain is precipitated by changing weather, cold, fatigue, movement/overuse, static position and stress, that her symptoms frequently interfere with attention and concentration, that she was severely limited in her ability to deal with work stress, that she can sit continuously for 30 minutes and 2 hours, that she can stand continuously for 5 minutes and 1 hour,[1] that she should walk for 5 minutes every 30 minutes, that she would need to take unscheduled breaks every 30 minutes and rest 15 minutes each time, that she can occasionally lift and carry less than 10 pounds and never more weight, that she could use her hands/fingers/arms for repetitive tasks only about 10 percent of a work day, and that she would be absent from work more than 3 times a month (Tr. 372-77). In a letter dated March 30, 2004, Dr. McBrayer said that due to her fibromyalgia, osteoporosis, degenerative joint disease of the knees and depression, "Mrs. Cress is totally disabled." (Tr. 566).

Contrary to Plaintiff's claims that Dr. McBrayer's opinions were ignored, ALJ Reynolds had Dr. McBrayer's medical records through the last treatment note on March 28, 2003 and specifically considered the information on the forms completed November 25, 2003. (Tr. 15, 49). He found it significant that the "treatment" note on that date included "fill[ing] out disability forms." (Tr. 15, 453). He found that Dr. McBrayer's treatment notes continued to be "sparse" and "mainly not[ed] Ms. Cress's subjective complaints without benefit of objective diagnostic and/or clinical findings." (Tr. 16). The work-related activity form shows that, in response to the question "[w]hat medical findings support the limitations described above," Dr. McBrayer wrote only: "these are reasonable estimations."[2] (Tr. 370). Dr. McBrayer further opined that Plaintiff could "never" twist, stoop (bend),

---

[1] Dr. McBrayer circled contradictory time limits for continuous sitting and standing.

[2] This Court found that Dr. McBrayer's prior opinion "states that there were no medical findings supporting the limitations, but that they are 'reasonable guesses.'" (Tr. 63).

5

crouch, climb stairs or climb ladders and that her ability to reach, handle, finger, feel, and push/pull were affected by her impairment. In response to the question "[w]hat medical findings support this," Dr. McBrayer left the form blank (Tr. 369-371). Likewise, the Fibromyalgia questionnaire does not reflect that it is supported by medically acceptable clinical and laboratory diagnostic techniques. "Treating physicians' opinions are only given [substantial] deference when supported by objective medical evidence." *Warner, v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). The ALJ properly gave little weight to McBrayer's unsupported opinions. 20 C.F.R. §§ 404.1527(b),(d)(2), (3)-(4); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188.

ALJ Reynolds further observed that the November opinions were merely one month after Judge Shultz's unfavorable decision and within days of Plaintiff's new disability application (Tr. 15-16). Accordingly, he found there was "no opportunity for a change in her condition." No such change in condition was noted by Dr. McBrayer in his treatment notes. In fact, he only noted that "Lexapro is helping." (Tr. 453). Dr. Kelly Cole, Plaintiff's treating rheumatologist, consistently and subsequently noted that her ADL's (activities of daily living) are "OK." (Tr. 16, 545, 548, 552). ALJ Reynolds also noted that Plaintiff "still shops, buys groceries, drives and mows the grass on a riding lawn mower, and is able to mop and vacuum the floor, activities which are not in keeping with severe, debilitating pain such as she continues to allege." (Tr. 16). Thus, Dr. McBrayer's opinions are inconsistent with and not supported by his own treatment records and are inconsistent with other evidence in the record. Moreover, they are not supported by objective evidence.

Lastly, Dr. McBrayer's conclusory opinion that Mrs. Cress is "totally disabled" is not to be given any special significance. Whether a person is disabled or unable to work is not a medical opinion, "but [is], instead, [an] opinion[] on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183 at *5. *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (ALJ not bound by conclusory statements of

6

doctors, particularly where unsupported by detailed objective criteria and documentation); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("[W]e are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition."). Accordingly, substantial evidence and proper legal standards support the ALJ's decision to give Dr. McBrayer's opinions little weight.

C.  **Whether the ALJ's Decision that Mrs. Cress Has the Residual Functional Capacity to Perform Light Work is Supported by Substantial Evidence**

Plaintiff relies on her subjective allegations of disabling pain and on her medical records from University Outpatient Psychiatry (Tr. 436-447) and Dr. Patel (Tr. 539-543) as objective evidence of an underlying condition that could reasonably be expected to produce her alleged disabling pain and impairments [DE #8-3, pp. 13-14]. Thus, she claims the ALJ's conclusion that she could do light work is not supported by the evidence.

A plaintiff's subjective statements of pain or other statements, taken alone, cannot support a finding of disability. *Tyra v. Secretary of Health & Human Services*, 896 F.2d 1024, 1030 (6th Cir. 1990). A plaintiff must present evidence from medically acceptable clinical or laboratory diagnostic techniques to show a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529 (a)-(e).

Dr. McBrayer's conclusory opinions lack any objective support and are nothing more than "guesses" or "estimations," as shown above. Plaintiff's reliance on University Outpatient Psychiatry is misplaced. Mary Beth Hall told Plaintiff on her May 4, 2004 visit that she could not sign the requested disability forms regarding her ability to work (Tr. 437). Additionally, they assessed Plaintiff with a Global Assessment of Function (GAF) score of 65-70 in January 2004 (Tr . 446), reflecting only mild limitations in activities of daily living and social functioning (Tr. 17). This assessment is consistent with a GAF score of 61-70 by consulting psychologist Geraldo C. Lima on February 27, 2004 (Tr. 386). The ALJ found these scores to be consistent with Plaintiff's

activities of reading, watching television, managing the family finances, and using her personal computer, and they reflect a strong indication of her ability to concentrate and stay on task (Tr. 17).

Plaintiff relies on a GAF score of 30 by psychiatrist P.D. Patel on July 1, 2004 (Tr. 543; DE #8-3, p. 14).  She states in her brief that this score "indicates a serious impairment of psychological functioning."  [DE 8-3, p. 14).  The ALJ noted that this score reflected behavior "considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas."  (Tr. 16).  *See Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM-IV-TR) at 34.  He further noted that this classification was inconsistent with Dr. Patel's own narrative report and treatment notes on August 7 and August 31, 2004 (Tr. 16) when he said she had no problems with thought content, including no delusions or hallucinations (Tr. 540-41).  The treatment notes for both dates reflect that Plaintiff was oriented as to place, person and time; her attention was focused; her psychomotor, speech, mood and affect were normal or appropriate with some anxiety on August 31; her thought process was logical; her judgment was intact; and her memory was normal (Tr. 540-41).

The ALJ found that Plaintiff's allegations were not totally credible (Tr. 18, 20) and noted some of her inconsistent statements, along with the inconsistencies between her statements and other evidence in the record (Tr. 17-18).  For example, the ALJ noted that her treating rheumatologist, Dr. Cole, described her ADLs as OK in July 2003 and May-June 2004 (Tr. 545, 548, 552), which is inconsistent with her claims of total disability (Tr. 16-17).  *See* 20 C.F.R. § 404.1529(c)(4) (conflicts between Plaintiff's allegations and other evidence may be considered in evaluating whether the symptoms are of a disabling severity); SSR 96-7p, 1996 WL 374186 at *5 (the consistency of Plaintiff's statements with the medical signs and laboratory findings and other information in the record bears upon credibility).  "[A]n ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."  *Cruse*, 2007 WL 2752888 at *9 (quoting *Jones*, 336 F.3d at 476).  "The

8

administrative law judge justifiably considered [Plaintiff's] ability to conduct daily life activities in the face of his claim of disabling pain." *Warner*, 375 F.3d at 392. *See also* 20 C.F.R. § 404.11529(c)(3); SSR 96-7p, 1996 WL 374186 at *3. "An ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments." *Cruse,* 2007 WL 2752888 at *9 (quoting *Walters*, 127 F3d at 532). Additionally, the Plaintiff's responses in the Background Questionnaire were changed to be "carefully worded" to suggest limited ability, but were inconsistent with her testimony. For example, she said she only drives "as necessary," but admitted making a two-hour drive to her sister's to go to the doctor with her and made several stops in route (Tr. 18). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* at 531.

Plaintiff further complains that the ALJ ignored and did not discuss the evidence presented by her chiropractor, Robert Boardman. [DE #8-3, pp. 14-15]. The most recent of these reports (Tr. 256-315) is dated August 15, 2003, well before ALJ Shultz's September 17, 2003 hearing and his October 22, 2003 decision. Accordingly, this evidence is not relevant to the present appeal. ALJ Reynolds noted that the prior evidence had been summarized by ALJ Shultz (Tr. 15). Plaintiff now complains because ALJ Shultz's findings do not address Mr. Boardman's reports. It is too late to raise issues regarding the October 22, 2003 decision, which was affirmed on appeal.

Also important in this case is the ALJ's finding regarding Plaintiff's residual functional capacity that "[t]he claimant has produced no new evidence which would warrant a change from that previously found...." (Tr. 18). Absent a change in the claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Commissioner of Social Security*, 126F3d 837, 842 (6th Cir. 1997). Accordingly, the ALJ properly found that Plaintiff's impairments:

> limit her exertionally to a range of light work with a sit/stand option with no prolonged standing or walking in excess of 30 minutes without interruption; no climbing of ropes, ladders or scaffolds; only occasional balancing, stooping, kneeling, crouching or crawling; and no exposure to concentrated dust, gases,

9

> fumes, temperature extremes, excess humidity, vibration or industrial hazards. She requires simple work with no repetitive procedures and no frequent changes in work routines. Granting her the benefit of the doubt, she requires only occasional interaction with the general public and only occasional interaction with others in group-type work.

A decision regarding residual functional capacity is reserved to the agency. 20 C.F.R. § 404.1527(e)(2). The record as a whole reflects substantial evidence to support the ALJ's residual functional capacity finding at step four (Tr. 18, 20, Findings 6, 11).

The ALJ continued step four by adopting the testimony of the Vocational Expert and then found that Plaintiff could not perform any of her past relevant work (Tr. 18, 20, Finding 7). He found, however, that Plaintiff could perform other work existing in the state and national economies (Tr. 18-20, Findings 8-12, Tr. 34). Based on the Vocational Expert's testimony, the ALJ properly found that Plaintiff was not disabled (Tr. 19-20, Finding 13). This same determination was previously upheld on appeal (Tr. 65) and there is no new evidence to warrant a change.

Where, as here, an ALJ's decision regarding disability is supported by substantial evidence in the record as a whole, it must be affirmed. *See Cornette v. Secretary of Health and Human Services,* 869 F.2d 260, 263 (6th Cir. 1988).

**III.   CONCLUSION**

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

1.   Plaintiff's Motion for Summary Judgment [DE #8] is **DENIED.**

2.   The Commissioner's Motion for Summary Judgment [DE #9] is **GRANTED**.

This October 22, 2007.



**Signed By:**

*Karl S. Forester*  KSF

**United States Senior Judge**